[Cite as *State v. Holter*, 2012-Ohio-3784.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.     26251 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARTIN T. HOLTER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.   CR 10 10 2851 |

DECISION AND JOURNAL ENTRY

Dated: August 22, 2012

DICKINSON, Judge.

## INTRODUCTION

{¶1}    Based mostly on eyewitness accounts, a jury convicted Martin Holter of stealing computer equipment from the Walmart store in Macedonia.  He was sentenced to serve nine months of incarceration as a result of his fifth-degree felony theft conviction.  He has appealed. This Court affirms because his conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.

## BACKGROUND

{¶2}    Two asset protection officers employed by Walmart testified that they were assigned by a superior to watch a suspicious male shopping in the electronics department of the Macedonia Walmart store on October 2, 2010.  When DeShawn Miller, one of the Walmart asset protection officers, located the suspect, he was leaving the electronics department with two big boxes in his cart.  Mr. Miller and the second store employee, Kahil Berry, testified that, inside

the cart they saw a blue and white box containing a computer monitor and a Hewlett-Packard box containing a Pavilion desktop computer.

{¶3}   The men testified that the suspect had a tattoo around his neck, but they could not read what it said.  They also testified that the man was wearing a white t-shirt, a tan or light brown jacket, and eyeglasses.  Both men stayed at least 15 to 20 feet away from the suspect, but maintained visual contact with him as he left his cart in the lawn and garden department and walked around in front of an emergency exit door located at the front of the store near the lawn and garden department.  Although the suspect did not touch the emergency door, a fire alarm began to sound, and store employees began evacuating the building, but the suspect continued to stand around, appearing to wait near the emergency exit door.  One of the loss protection employees called for a uniformed store employee to escort the man from the building.  Both Mr. Miller and Mr. Berry continued to watch the suspect as he exited via the main entrance without any merchandise, having left his cart in the lawn and garden area.

{¶4}   Both men testified that they watched the suspect get into the front passenger's seat of a dark-grey Ford Focus, and Mr. Miller memorized the license plate.  The car then drove around a blocked-off construction area in the parking lot to drive alongside the Walmart building.  Mr. Miller and Mr. Berry sprinted after the car and located it parked outside the fence by the lawn and garden department.  Mr. Berry testified that he saw the suspect inside the lawn and garden department despite the fact that the fire alarm was still sounding, indicating that nobody should have been inside the building.  Mr. Miller then ran back to the front of the store to try to locate a manager while Mr. Berry stayed to watch the suspect.  The two men kept in touch via cellphones.  Mr. Berry testified that, as he got closer, he saw the computer and monitor boxes

outside of the fence. He then watched as the suspect "jumped on a pallet of mulch" and climbed over the fence, loaded the two boxes into the car, and got inside.

{¶5} When Mr. Miller ran back to find a manager, he instead approached a firefighter in an SUV who had responded to the fire alarm. The firefighter offered to use his radio to contact local police for Mr. Miller while they followed the suspect's car. As they pulled around to the lawn and garden area, Mr. Berry pointed out to them that the grey Focus was just pulling out of the parking lot. Mr. Miller testified that the car did not speed away and the firefighter was able to follow it while staying several cars behind it. Mr. Miller maintained visual contact with the grey Focus as they followed it on Route 8 southbound and radioed through the fire department's dispatcher for local police to stop it. Meanwhile, Mr. Berry and another Walmart employee drove to the scene of the traffic stop.

{¶6} After the two people inside the car were secured during the stop, police asked Mr. Miller and Mr. Berry to identify the computer equipment found in the back seat of the car, the woman driving the car, and the male passenger. Both men identified the male passenger, Mr. Holter, as the man they had watched at the Walmart store. They also testified that the computer equipment was the same merchandise they watched Mr. Holter steal from the store. Photos taken by police at the scene of the traffic stop indicate that both boxes were still wrapped in the "spider wrap" or electronic security wires the store uses to deter theft of expensive merchandise. After taking photographs, police returned the merchandise to the Walmart employees.

SUFFICIENCY

{¶7} By his sole assignment of error, Mr. Holter challenges both the sufficiency and weight of the evidence. Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State*

*v. West*, 9th Dist. No. 04CA008554, 2005–Ohio–990, ¶ 33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of his guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶8} Although Mr. Holter has couched all of his arguments in terms of challenging both the sufficiency and weight of the evidence, his only true sufficiency argument challenges the State's evidence of the value of the merchandise involved in the theft. At the time of the offense, a violation of Section 2913.02 was a felony of the fifth degree "[i]f the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars[.]" R.C. 2913.02(B)(2), effective Apr. 7, 2009. At trial, Mr. Miller testified that the sticker prices of the computer and monitor equaled $867. He said that he was sure of those prices because, after police returned the merchandise to him, he scanned the barcodes from each box into the Walmart computer system.

{¶9} Mr. Holter has argued that there was not sufficient evidence to prove that the computer equipment cost more than $500 because the Walmart employees who testified did not know whether the equipment was on sale on the day of the theft. Section 2913.61(D) of the Ohio Revised Code provides criteria to be used in determining the value of property or services involved in a theft offense. Under that section, the value of personal property held for sale by a retail outlet is the fair market value, that is, the amount a buyer is willing to pay and the seller is willing to accept to sell the item "assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act." R.C. 2913.61(D)(3), effective Sept. 9, 2000. "Without limitation on the evidence that may be used to establish the value of property or services

involved in a theft offense . . . [if] the property involved is personal property held for sale at wholesale or retail, the price at which the property was held for sale is prima-facie evidence of its value." R.C. 2913.61(E)(1), effective Sept. 9, 2000.

{¶10} Mr. Miller testified about the "sticker price" of both items involved in the theft. He explained that the Walmart computer system listed the items for sale at those prices. That is prima facie evidence of their value in this context. *See* R.C. 2913.61(E)(1), effective Sept. 9, 2000. To the extent that it addressed the sufficiency of the evidence, Mr. Holter's assignment of error is overruled.

### MANIFEST WEIGHT

{¶11} The second part of Mr. Holter's assignment of error is that his conviction is not supported by the manifest weight of the evidence. If a defendant argues that his conviction is against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (9th Dist. 1986). Mr. Holter's first argument in this regard relates to his sufficiency challenge to the State's evidence proving the value of the stolen goods. Because there was no evidence regarding whether the items were offered for sale at a discount on the day of the theft, Mr. Holter has argued that his fifth-degree felony conviction is not supported by the weight of the evidence.

{¶12} As discussed in relation to his sufficiency argument, Mr. Miller's testimony regarding the "sticker price" of the goods was prima facie evidence of the fair market value. If Mr. Holter believed that evidence to be inaccurate, he should have offered some contrary

evidence for the jury to consider. *See State v. Edwards*, 2d Dist. No. 2755, 1991 WL 102729, *8 (June 13, 1991). In this case, the jury had no contrary evidence to challenge the sticker price of each item. To the extent that Mr. Holter's assignment of error addressed the manifest weight of the evidence in regard to the value of the stolen merchandise, it is overruled.

{¶13} Mr. Holter's next argument relates to the manifest weight of the evidence challenging the veracity of the Walmart employees' identification of Mr. Holter. He has argued that, during the traffic stop, both of the Walmart employees identified the female driver of the car despite their testimony that they had never before seen the person who was driving the car and did not even know the driver's gender until they joined police at the side of the road during the traffic stop. Because their basis for identification of the female driver was questionable, Mr. Holter has argued that their identification of him should not have been trusted.

{¶14} Under Section 2913.02 of the Ohio Revised Code, "[n]o person, with purpose to deprive the owner of property . . . , shall knowingly obtain or exert control over . . . the property . . . [w]ithout the consent of the owner or person authorized to give consent[.]" R.C. 2913.02(A)(1), effective Apr. 7, 2009. Two Walmart employees testified that they followed Mr. Holter around inside the Walmart store for some time before seeing him complete the theft. Although they stayed at least 15 feet away from him, they described his height, clothing, and a tattoo around his neck. They said the tattoo was the man's most obvious identifying feature. They also testified that the only time they lost sight of him was when the car he entered drove around the side of the building, but they quickly located him again when they ran over and saw the same car parked beside the fence. Mr. Miller and Mr. Berry had also described the suspect's clothing, including a tan jacket and eyeglasses, both of which were found on the floor of the car by Mr. Holter's feet when police caught him. Based on this evidence, the jury did not lose its

way when it determined that Mr. Holter was the man who stole the computer equipment. To the extent that Mr. Holter's assignment of error addressed the manifest weight of the evidence in regard to the identification of him as the perpetrator of this theft, it is overruled.

{¶15} Finally Mr. Holter has challenged the manifest weight of the evidence due to the witnesses' identification of the merchandise. He has made two arguments in this regard. First, he has argued that his conviction is against the manifest weight of the evidence because Mr. Berry and Mr. Miller were unable to offer any direct evidence that the computer equipment found in the backseat of the car had come from the Macedonia Walmart.

{¶16} The men were able to testify that the stickers on the boxes identified them as Walmart products and the spider wrap security wires were still intact, as they had been inside the Walmart store. Mr. Holter's lawyer elicited evidence on cross-examination, however, indicating that, although subsequent scanning of the barcodes confirmed the boxes were from Walmart stock, it could not differentiate among the Walmart stores. Therefore, Mr. Holter has argued that the men could not testify "that these particular items came from the Walmart in Macedonia."

{¶17} "[C]ircumstantial evidence and direct evidence inherently possess the same probative value . . . ." *State v. Starks*, 9th Dist. No. 25155, 2010-Ohio-5980, ¶ 9 (quoting *State v. Jenks*, 61 Ohio St. 3d 259, paragraph one of the syllabus (1991)). Mr. Holter has correctly pointed out that there was no direct evidence that the Walmart computer boxes found in the car with Mr. Holter were the same two computer boxes Mr. Berry watched Mr. Holter load into the car outside the lawn and garden department of the store. The testimony of Mr. Berry and Mr. Miller, however, provided circumstantial evidence that they were the same two boxes. The Walmart employees testified that they saw Mr. Holter stash a cart containing a Hewlett-Packard Pavilion computer and a monitor in a blue and white box in the lawn and garden department, and

Mr. Berry later saw Mr. Holter jump the fence of that department and load what appeared to be the same two boxes into the back of the grey Focus. Further, the asset protection officers testified that they never lost visual contact with the Focus until it was stopped by police, at which time two boxes from Walmart, containing a Hewlett-Packard Pavilion desk top computer and a monitor were found in the car, both still wrapped in Walmart's security devices.

{¶18} Mr. Holter has also argued that his conviction is against the manifest weight of the evidence because neither of the boxes in the back seat of the car was damaged, despite the fact that, if Mr. Berry's testimony is to be believed, Mr. Holter must have either thrown the boxes over or dropped them from the top of a fence that is 15 feet high. Mr. Berry estimated that the fence was about 12 to 15 feet high, and he testified that Mr. Holter had no trouble scaling it. Although he did not testify about how the merchandise was removed from the store, he said that, after running around the outside of the store, he saw Mr. Holter inside the fence in the lawn and garden department while the merchandise that had been in Mr. Holter's cart inside the store was on the ground outside the fence. Mr. Berry also testified that he watched Mr. Berry climb up onto a pallet of mulch that had bags of mulch stacked up approximately four feet before climbing the rest of the way over the fence. He also said that there was mulch stacked up on the outside of the fence that helped Mr. Holter descend on the outside as well. The fact that the evidence revealed no damage to the computer boxes does not cause this Court to conclude that Mr. Holter's conviction is not supported by the manifest weight of the evidence. The jury may have reasonably concluded that, despite the lack of damage to the boxes, there was no reasonable doubt about the large amount of circumstantial evidence tending to show that the boxes police found in the car with Mr. Holter were the same two boxes Mr. Berry and Mr. Miller had watched Mr. Holter take from the electronics department before the fire alarm sounded. In any event, the

jury did not lose its way and create a manifest miscarriage of justice in determining that Mr. Holter stole the computer equipment that was found with him in the Ford Focus just minutes after the crime. Mr. Holter's assignment of error is overruled.

## CONCLUSION

**{¶19}** Mr. Holter's assignment of error is overruled because his conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P.J.
BELFANCE, J.
<u>CONCUR</u>

<u>APPEARANCES</u>:

RONALD T. GATTS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.